UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Katherine L. Alley, 2400 Wyoming Avenue, N.W., Washington, D.C. 20008<br><br>           Plaintiff,<br><br>   v.<br><br>UNUM Life Insurance Company of America,<br><br>           Defendant. | Civil Action No.  14-849<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

Plaintiff, Katherine L. Alley, M.D. ("Dr. Alley" or "Plaintiff"), brings this Complaint against Defendant, UNUM Life Insurance Company of America ("UNUM" or "Defendant"), and states as follows:

### NATURE OF THE ACTION AND RELIEF SOUGHT

1.      This is an insurance coverage action in which Dr. Alley seeks to recover compensatory and other damages from an insurance company, UNUM, that has failed to honor its contractual obligations to pay lifetime disability benefits to Dr. Alley after she was rendered totally disabled and was no longer able to perform her job functions as a breast surgeon.

2.      Dr. Alley also seeks a declaration from this Court that UNUM is obligated to pay her lifetime disability benefits under the terms of the two disability policies that she purchased from UNUM because her total disability is due to an "Injury," defined by the purchased policies to mean "bodily harm caused by an accident."  Dr. Alley further seeks an award of damages for (a) the value of the benefits to which she was entitled after December 15, 2013 and February 15, 2014, when UNUM ceased making payments under the two policies, and (b) the value of benefits that UNUM is contractually obligated to make in the future.

**PARTIES**

3.     Dr. Alley is and at all relevant times was a citizen of the District of Columbia. Dr. Alley obtained her license to practice medicine in 1978 and was a successful and well-respected breast surgeon until June 2011, when she was no longer able to carry out the functions of her job due to severe and continuous pain resulting from an "Injury" to her spinal accessory nerve during a May 7, 2010 surgery.

4.     Upon information and belief, UNUM is an insurance company duly organized under the laws of the state of Delaware with its principal place of business in Portland, Maine. Upon information and belief, UNUM is licensed to do business in the District of Columbia and frequently does business in the District of Columbia. Upon information and belief, UNUM is a wholly owned subsidiary of UNUM Group.

**JURISDICTION**

5.     This Court has jurisdiction pursuant to the diversity provisions of 28 U.S.C. § 1332. The matter in controversy exceeds, exclusive of interests and costs, $75,000.

6.     This Court has authority pursuant to 28 U.S.C. § 2201 to declare the rights of Dr. Alley and UNUM.

7.     This Court has personal jurisdiction over Dr. Alley, a long-time citizen of the District of Columbia. This Court also has personal jurisdiction over UNUM pursuant to D.C. Code Ann. § 13-423 because UNUM sold two disability insurance policies to Dr. Alley, a citizen of the District of Columbia.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of UNUM's unlawful conduct that gave rise to this complaint occurred in this district.

**BACKGROUND**

**I.     Dr. Alley's Disability Insurance Policies.**

9.     UNUM sold Dr. Alley two individual disability income polices. The first policy was issued February 15, 1985 with policy number LAD035392 and has a Maximum Disability

Benefit of $4,769 per month, subject to a cost of living adjustment.  *See* Ex. A ("1985 policy"). The second policy was issued December 15, 1986 with policy number LAD008122 and has a Maximum Disability Benefit of $9,836 per month, also subject to a cost of living adjustment. *See* Ex. B ("1986 policy").  The premiums for both policies have been paid on a timely basis from the date of issuance.

10.     The 1985 and 1986 policies provide different benefits depending on how the policyholder becomes "Totally Disabled."

11.     If the policyholder becomes "Totally Disabled" due to an "Injury" before the policy anniversary when her age was sixty-five and the disability was continuous thereafter, she is entitled to the Maximum Disability Benefit each month until death after satisfying the Elimination Period or until she no longer satisfies the definition of "Totally Disabled."  Both policies define "Injury" as "bodily harm caused by an accident."  The Lifetime Accident Benefit Rider in both policies defines "Total Disability" and "Totally Disabled" to mean "injury restricts the Insured's ability to perform the material and substantial duties of [her] regular occupation to an extent that prevents [her] from engaging in [her] regular occupation" and "the Insured is receiving medical care from someone other than [herself] which is appropriate for that injury." The policies both define the Elimination Period to be 60 days.

12.     If the policyholder becomes "Totally Disabled" due to "Sickness," meaning "a mental or physical illness or condition which has been diagnosed or treated," she is entitled to the Maximum Disability Benefit each month until her sixty-fifth birthday or until she no longer satisfies the definition of "Totally Disabled," whichever is shorter.

13.     The 1985 and 1986 policies do not contain any exclusion or limitation for when a policyholder suffers "Total Disability" as a result of a complication during surgery.

**II.     Injury to Dr. Alley's Spinal Accessory Nerve.**

14.     In November 2009, Dr. Alley began to experience some neck stiffness that slowly worsened and became more frequent.  By April 2010, Dr. Alley had developed a foot drop and

decided to get an MRI.  The MRI showed that Dr. Alley had a spinal meningioma, a benign tumor arising from the covering of the brain or spinal cord.

15. On April 26, 2010, Dr. Alley consulted with Dr. Jeff Jacobson, a local neurosurgeon, who recommended surgery.

16. On May 7, 2010, Dr. Jacobson operated on Dr. Alley to remove the spinal meningioma.

17. Shortly after the surgery Dr. Alley developed a shoulder drop on the right side and experienced an increasing amount of pain.  Over the course of several months, her pain increased, and her use of her right arm and shoulder decreased.  She followed her neurosurgeon's advice and started physical therapy to decrease her pain and improve her shoulder deficit.  Nevertheless, by late April or early May 2011, it had become clear that physical therapy could not recover her shoulder function and that the surgery had resulted in an unexpected loss of function of the spinal accessory nerve that innervates the trapezius muscle, the primary support muscle of the shoulder.  Prior to the surgery to remove the meningioma, Dr. Alley had no signs of muscle weakness or pain in her shoulders.  Her use of her arms and shoulder was entirely normal.

18. On June 28, 2011, Dr. William Levine performed an Eden-Lang procedure to move other neck and shoulder muscles in the hope that they would take over the function of the trapezius muscle, which had atrophied because of the nerve injury.  Unfortunately, this second surgery was not successful.

19. As a result of the injury to Dr. Alley's spinal accessory nerve, she was forced to work at reduced capacity from May 7, 2010 until June 28, 2011, and after June 28, 2011, she was no longer able to carry out her duties as a breast surgeon.

III. **Dr. Alley Suffered "Bodily Injury Due to an Accident."**

20. Neither the 1985 policy nor the 1986 policy defines "accident."  "Accident" is commonly defined as "'something happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected.'"  *Kolb v. Paul Revere Life Ins.*, 355

F.3d 1132, 1134 (8th Cir. 2004) (quoting *Duvall v. Mass. Indem. & Life Ins. Co.*, 748 S.W.2d 650, 652 (Ark. 1988)) (holding that, under a similar disability policy, the plaintiff was entitled to lifetime disability benefits because the plaintiff's injury should be considered accidental even though it was a known risk of surgery); *see also* Concise Oxford English Dictionary 7 (11th ed. 2009) (defining "accident" as "an unfortunate incident that happens unexpectedly and unintentionally").

21. The injury to Dr. Alley's spinal accessory nerve during her spinal meningioma surgery was an unexpected result of the surgery and, therefore, was an "Injury," defined as "bodily harm caused by an accident," under the 1985 and 1986 policies.

### IV. UNUM Refused to Pay Dr. Alley Lifetime Benefits Under the Injury Definition of the 1985 and 1986 Policies.

22. On or about August 17, 2011, after the injury to Dr. Alley's spinal accessory nerve and subsequent Eden-Lang procedure, she submitted a disability claim for benefits arising from the injury to her spinal accessory nerve during her May 7, 2010 meningioma surgery.

23. On October 3, 2011, UNUM denied that Dr. Alley had suffered an "Injury" on the grounds that the damage to Dr. Alley's spinal accessory nerve was "a risk of surgery and [was] not considered an accident." UNUM subsequently determined that Dr. Alley was Totally Disabled under the policies but would only receive benefits under the Sickness provision. Because UNUM evaluated Dr. Alley's claim under the Sickness provision of her policies, UNUM ceased making disability payments on the policy anniversary dates after Dr. Alley's sixty-fifth birthday for each policy. UNUM paid the maximum disability benefits under the 1985 and 1986 policies until December 15, 2013 and February 15, 2014 respectively.

24. On December 31, 2013, Dr. Alley's counsel requested that UNUM reconsider its refusal to pay Dr. Alley's disability benefits under the Injury provision of her policies. UNUM responded on January 6, 2014, granting Dr. Alley until March 7, 2014 to submit additional materials supporting Dr. Alley's claim that the damage to her spinal accessory nerve was due to an "Injury."

25. On March 5, 2014, Dr. Alley submitted additional materials, which explained in detail that the damage to Dr. Alley's spinal accessory nerve qualified as an "Injury" under Dr. Alley's 1985 and 1986 policies.

26. On March 26, 2014, UNUM rejected Dr. Alley's request and reaffirmed its position that her disability benefits were governed by the Sickness provision of the policies.

27. All conditions precedent have been met, have been waived or excused, or are subject to estoppel.

## CAUSE OF ACTION:
## BREACH OF CONTRACT FOR FAILURE TO PAY LIFETIME DISABILITY BENEFITS

28. Dr. Alley repeats and realleges the allegations of Paragraphs 1 through 27 as though fully set forth herein.

29. The 1985 and 1986 disability policies are contracts between UNUM and Dr. Alley. Since purchasing the disability policies, Dr. Ally has performed all obligations required by the policies, including but not limited to payment of all premiums due for nearly 30 years. Dr. Alley intended and expected thereby to be assured of peace of mind and financial and economic security, in the event that she became totally disabled and could no longer perform the duties of her regular occupation as a breast surgeon.

30. Dr. Alley is entitled to lifetime disability benefits under the 1985 and 1986 policies, and UNUM has the obligation to pay those benefits.

31. UNUM has failed and refused, and continues to fail and refuse, to pay Dr. Alley the lifetime disability benefits to which she is entitled under the 1985 and 1986 policies. These failures and refusals constitute a material breach and an ongoing material breach of the 1985 and 1986 policies.

32. UNUM's payment of disability benefits to Dr. Alley until December 15, 2013 under the 1985 policy and until February 15, 2014 under the 1986 policy does not relieve UNUM from its obligation to make lifetime disability payments as required by the Lifetime Accident Benefit Rider in both policies.

33. UNUM has breached its contractual and common law obligations to Dr. Alley by its conduct, including its failure and refusal to fulfill completely its obligations to pay Dr. Alley's claim under the Injury provision of the 1985 and 1986 policies.

34. As a direct and proximate result of UNUM's breach of contract, which is continuing, UNUM has deprived Dr. Alley of the benefits of the disability insurance protection for which full premiums were paid for nearly 30 years.  Dr. Alley has sustained and continues to sustain damages caused by UNUM's breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Alley requests the following relief:

1. A declaration that UNUM has breached the 1985 and 1986 policies by failing and refusing to pay Dr. Alley lifetime disability benefits under the Lifetime Accident Benefit Rider of each policy;

2. A declaration that the injury to Dr. Alley's spinal accessory nerve qualifies as an "Injury" under the UNUM policies and that UNUM is obligated to make monthly payments of the Maximum Disability Benefit, subject to the cost of living adjustment, for the remainder of Dr. Alley's life;

3. A judgment for all damages proximately caused by UNUM's breach of contract, to be determined at trial, including but not limited to (a) the value of the disability benefits UNUM has failed to pay after December 15, 2013 and February 15, 2014, when UNUM ceased making payments under the two policies, (b) the value of the disability benefits UNUM is contractually obligated to pay in the future, and (c) pre- and post-judgment interests, costs, and reasonable attorney's fees.

4. Such other and further relief as this Court may deem just and appropriate.

## JURY REQUEST

Dr. Alley requests a trial by jury on all jury issues raised by the pleadings.


Dated: May 22, 2014                                    Respectfully submitted,

**PERKINS COIE LLP**


By: /s/ Donald J. Friedman
Donald J. Friedman, Bar No. 413701
dfriedman@perkinscoie.com
Edward C. Thomas, Bar No. 989944
ethomas@perkincoie.com
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone:  202-654-6240
Facsimile:  202-654-6211

Attorneys for Plaintiff
Katherine Alley, M.D.